UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH MATTHEW MENDEZ,

Plaintiff,

v.

B. LEE, et al.,

Defendants.

No.  2:16-cv-0477 DJC AC P

FINDINGS & RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF No. 31.

I.      Procedural History

This case proceeds on the first amended complaint, which was screened and found to state claims for deliberate indifference against defendants Lee, Murray, and Lewis.  ECF No. 9.  After the close of discovery, defendants filed a motion for summary judgment, which plaintiff opposes.  ECF Nos. 31, 36.

II.     Plaintiff's Allegations

The first amended complaint alleges that plaintiff was seen by an audiologist/ENT specialist who referred him for immediate treatment of his "vastly deteriorating" hearing, including a cochlear implant to restore his hearing or at least maintain it at the current level.  ECF

1

No. 8 at 3.  Defendant Lee denied plaintiff's first-level appeal seeking surgery, while Murray and Lewis denied his second- and third-level appeals, respectively.  Id. at 3-4.  As a result of the failure to approve plaintiff's treatment he has suffered from total hearing loss and is more at risk of being victimized.  Id. at 3.

III.    Motion for Summary Judgment

A.    Defendants' Arguments

Defendants argue that they are entitled to summary judgment because they responded appropriately to plaintiff's medical condition and therefore were not deliberately indifferent to his serious medical need, and their review of plaintiff's appeal does not give rise to a cause of action. ECF No. 31-2 at 17-27.  Alternatively, they argue that they are entitled to qualified immunity.  Id. at 27-29.

B.    Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

1  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

2  omitted).

3       Accordingly, the court considers the record before it in its entirety despite plaintiff's

4  failure to be in strict compliance with the applicable rules.  However, only those assertions in the

5  opposition which have evidentiary support in the record will be considered.

6       Plaintiff argues that defendants are not entitled to summary judgment because they were

7  deliberately indifferent in denying his request for a cochlear implant and because their

8  involvement went beyond reviewing his appeal.  ECF No. 36 at 18-21.  He asserts that they also

9  reviewed all of his medical records, which documented his clear need for an implant.  Id.

10  Plaintiff also argues that defendants are not entitled to qualified immunity.  Id. at 1-2, 21.

11      IV.   Legal Standards for Summary Judgment

12       Summary judgment is appropriate when the moving party "shows that there is no genuine

13  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

14  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

15  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

16  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

17  moving party may accomplish this by "citing to particular parts of materials in the record,

18  including depositions, documents, electronically stored information, affidavits or declarations,

19  stipulations (including those made for purposes of the motion only), admissions, interrogatory

20  answers, or other materials" or by showing that such materials "do not establish the absence or

21  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

22  support the fact."  Fed. R. Civ. P. 56(c)(1).

23       "Where the non-moving party bears the burden of proof at trial, the moving party need

24  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

25  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

26  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

27  motion, against a party who fails to make a showing sufficient to establish the existence of an

28  element essential to that party's case, and on which that party will bear the burden of proof at

1    trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

2    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

3    a circumstance, summary judgment should "be granted so long as whatever is before the district

4    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

5    56(c), is satisfied." Id.

6         If the moving party meets its initial responsibility, the burden then shifts to the opposing

7    party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

8    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

9    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

10   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

11   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

12   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

13   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

14   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

15   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

16        In the endeavor to establish the existence of a factual dispute, the opposing party need not

17   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

18   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

19   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

20   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

21   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

22   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

23   quotation marks omitted).

24        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

25   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

26   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

27   opposing party's obligation to produce a factual predicate from which the inference may be

28   drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

4

1   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

2   some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

3   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

4   non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

5   U.S. at 289).

6       Defendants simultaneously served plaintiff with notice of the requirements for opposing a

7   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

8   summary judgment.  ECF No. 31-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

9   1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

10  Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

11      V.     Undisputed Material Facts

12      Plaintiff did not separately respond to defendant's Statement of Undisputed Facts (DSUF),

13  and the facts are therefore deemed undisputed except as otherwise discussed.[1]  Additional facts

14  have been taken from plaintiff's medical records and grievances as appropriate.

15      At all times relevant to the complaint, plaintiff was an inmate in the custody of the

16  California Department of Corrections and Rehabilitation (CDCR) and housed at High Desert

17  State Prison (HDSP).  DSUF ¶¶ 1-2; ECF No. 36 at 2.  He has not received medical training.

18  DSUF ¶ 3.  During the relevant times, defendant Lee was employed by the CDCR as a Chief

19  Physician and Surgeon at HDSP, while Murray and Lewis were employed by California

20  Correctional Health Care Services (CCHCS) as the Chief Executive Officer of CCHCS at HDSP

21  and the Deputy Director of Policy and Risk Management Services, respectively.  DSUF ¶¶ 4-5, 8,

22  11; ECF No. 36 at 2-3.

23      On May 19, 2014, plaintiff informed physician assistant Miranda that he was "a bit hard

24  of hearing" and plaintiff was referred to audiology for an initial evaluation.  DSUF ¶ 14; ECF No.

25  36 at 4.  One month later, plaintiff was seen for a follow-up and Miranda noted that audiology

26  ───────────────

27  [1]  The court notes that plaintiff's opposition includes a facts section that largely parallels
    defendants' statement of facts, though he does not cite to any evidence on the record.  ECF No.
    36 at 2-11.  Plaintiff's recitation of facts will be considered in determining whether a fact is
28  undisputed, as appropriate.

recommended an ear lavage prior to plaintiff's next visit.  DSUF ¶ 15; ECF No. 36 at 4.  Miranda also noted "will get hearing aids soon?" and that he would follow up with audiology.  ECF No. 31-5 at 34.

In October 2014, plaintiff was evaluated by Dr. Greenleaf as a follow-up to audiology and it was noted that plaintiff had an audiogram in August 2014 and was given a hearing aid to wear in his right ear.  DSUF ¶ 16; ECF No. 36 at 4.  Plaintiff reported that "[h]e was told the left ear hearing is nearly completely gone, and it is not necessary to have a hearing aid in his left ear as it will not help; it is essentially completely deaf."  ECF No. 31-5 at 36.  Greenleaf assessed plaintiff as having deafness in his left ear, partial deafness in his right ear, and noted that plaintiff was wearing his new hearing aid which seemed to be working "quite well."  DSUF ¶ 17; ECF No. 36 at 4.  It was further noted that effective communication was reached and plaintiff understood all of Greenleaf's questions and answered them appropriately, was classified as Disability Not Impacting Placement Hearing (DNH), and used accommodations successfully.  DSUF ¶ 18; ECF No. 31-5 at 37.  A request was put in for a consultation with an ear, nose, and throat (ENT) specialist to determine the etiology of plaintiff's deafness.  DSUF ¶ 19; ECF No. 36 at 4.

On January 6, 2015, plaintiff saw ENT specialist Dr. Ludlow for evaluation of his hearing.  DSUF ¶ 20; ECF No. 36 at 4.  Plaintiff reported that he began losing his hearing at least five years ago, had no useful hearing in his left hear, and had just gotten a hearing aid for his right ear.  DSUF ¶ 21; ECF No. 31-5 at 39.  Ludlow noted that plaintiff's hearing was "obviously impaired" and that plaintiff's communication and speech were "good."  DSUF ¶ 22; ECF No. 36 at 4.  Plaintiff's ears were "[p]erfectly clear with no fluid, inflammation or retraction" with hearing "subjectively decreased severely on the right, no response on the left."  DSUF ¶ 23; ECF No. 36 at 4.  The report also states that Ludlow reviewed a hearing test and that plaintiff "has no discrimination in the left ear, he has moderately good discrimination in the right ear at 105 decibels" and his impression was that plaintiff had "[s]evere to profound hearing loss."  DSUF ¶¶ 24-25; ECF No. 31-5 at 39; ECF No. 36 at 4-5.  Ludlow recommended that plaintiff "be referred to Dr. Hilary Brodie in the department of otolaryngology at UC Davis" and that plaintiff be evaluated for a cochlear implant.  DSUF ¶ 25; ECF No. 36 at 5.

6

On February 12, 2015,[2] plaintiff was seen by Mirada for a follow-up to his ENT appointment and it was noted that he was wearing a hearing aid, could "hear [him] well at 6 feet away.  Answers appropriately," and effective communication was reached.  DSUF ¶ 27; ECF No. 31-5 at 41.  During the appointment plaintiff reported that he continued to have decreased hearing with a hearing aid and agreed to an ENT visit.  ECF No. 31-5 at 41.  Miranda further noted the recommendation for a cochlear implant and completed a request for service on a routine basis.  Id.; ECF No. 31-7 at 16.  Defendant Lee denied the request for service on February 17, 2015, and referred the referral to the Headquarters Utilization Management Committee (HUMC) for evaluation.  ECF No. 31-7 at 16; DSUF ¶ 28.

On May 21, 2015, plaintiff was examined by Dr. Bannister, who noted the January 6, 2015 consultant note for a consideration of a cochlear implant and that plaintiff was not wearing hearing aids and asked for his hearing aids to be repaired.  DSUF ¶ 29; ECF No. 31-5 at 43.  Bannister noted that plaintiff's hearing was "Not At Goal," he was putting in a request to audiology to have plaintiff's hearing aid repaired, and effective communication was achieved.  ECF No. 31-5 at 43.

On June 10, 2015, plaintiff submitted a health care services request claiming that he needed to be "reassessed by an audiologist immediately," that his hearing was "rapidly becoming obsolete," and his hearing aid was "ineffective."  DSUF ¶ 39; ECF No. 31-5 at 45.  The same day he also submitted appeal log HDSP HC 15029247 in which he stated that he was "being denied urgent medical care," was "on the brink of becoming deaf," and had seen two specialists that had recommended a cochlear implant.  DSUF ¶ 38; ECF No. 31-5 at 11.  The following day, RN Hubbard reviewed the health care request and noted that plaintiff had been seen by audiology on June 9, 2015, issued new hearing aids, and would be scheduled for a routine audiogram."  DSUF ¶ 40; ECF No. 31-5 at 45.

On June 18, 2015, plaintiff was seen by Dr. Lankford on a follow-up from his June 9,

---

[2]  Defendants state that the appointment occurred on February 2, 2015, but the record appears to be dated February 12, 2015.  See DSUF ¶ 27; ECF No. 31-5 at 41.  In either event, the difference in date is not material.

2015 audiology appointment and for decreased hearing and a broken hearing aid.  DSUF ¶ 41; ECF No. 31-5 at 47.  Lankford noted that the audiologist replaced plaintiff's broken hearing aid, plaintiff had no problem hearing him at normal speech, he was able to achieve effective communication, and plaintiff's hearing loss was "At Goal."  DSUF ¶ 42; ECF No. 31-5 at 47.

On June 24, 2015, the reasonable accommodation panel responded to plaintiff's request for a cochlear implant, which he claimed was being denied by defendant Lee.  ECF No. 31-5 at 50.  The panel determined that no interim accommodations were required and that plaintiff was in the process of being treated and evaluated by medical staff.  Id.  Specifically, they found that he had recently been seen by audiology, had his hearing aids replaced, and was scheduled for a follow-up testing with an audiologist in a month.  Id.  The disability verification process worksheet was completed by defendant Lee and noted that the HUMC had denied approval for a cochlear implant on June 10, 2015 and that there was "no medical indication for cochlear implant emergently."  Id. at 49.

On July 21, 2015, plaintiff was seen by audiology for an audiogram, the results of which showed zero word-recognition and no response to any sound impulse to 120 decibels.  DSUF ¶ 49; ECF No. 36 at 7.  Defendants assert that the accuracy of the results was "very unlikely" since plaintiff had been previously noted to be able to converse with functioning hearing aids.  DSUF ¶ 49.  Plaintiff asserts the results were accurate.  ECF No. 36 at 7.

On August 6, 2015, plaintiff was interviewed by Lankford, who noted that he could hear conversational levels of speech but still wanted a referral to a cochlear transplant specialist.  DSUF ¶ 50; ECF No. 31-5 at 56.  Lankford further noted that plaintiff's hearing loss was being treated at goal, that plaintiff's hearing aids were functioning, and that plaintiff could hear normal conversations at normal decibels.  DSUF ¶ 51; ECF No. 31-5 at 56.  A request for service to UC Davis was submitted.  DSUF ¶ 52; ECF No. 31-5 at 56; ECF No. 31-7 at 26.

On August 21, 2015, defendant Lee responded to plaintiff's first-level appeal.  DSUF ¶ 54; ECF No. 31-5 at 15.  The appeal was partially granted because plaintiff was referred to audiology and the response stated that plaintiff was seen by audiology on July 21, 2015, and that Lankford had put in a request for services on August 6, 2015, that was currently pending.  ECF

8

No. 31-5 at 15.  In preparing the response, Lee reviewed plaintiff's appeal, notes from plaintiff's interview with Lankford on August 6, 2015, plaintiff's unit health record, and all pertinent departmental policies and procedures.  DSUF ¶ 53; ECF No. 31-5 at 15.  She conducted a full evaluation of plaintiff's medical record and found that plaintiff was in the process of being treated and evaluated by medical staff and was able to communicate effectively with various healthcare providers on numerous occasions using working hearing aids.  DSUF ¶ 55; ECF No. 31-5 at 15. Lee ultimately determined that there was no need for a cochlear implant based on her findings and her medical opinion.  DSUF ¶ 58.  A cochlear implant is not a medical necessity if a patient has working hearing aids, which plaintiff had, and the HUMC's decision from June 2015 confirmed.  DSUF ¶ 56.  Plaintiff submitted his dissatisfaction with the appeal response on or around September 9, 2015.  DSUF ¶ 59; ECF No. 36 at 8.

On September 16, 2015, the Institutional Utilization Management Committee (IUMC) denied the request for service for consultation at UC Davis on the ground that plaintiff's case did not meet Interqual criteria and there was no medical necessity for a cochlear implant because plaintiff's hearing aids worked and he could converse.  DSUF ¶ 61; ECF No. 31-5 at 58-59. Interqual is a well-respected and widely used evidence-based clinical decision support solution to help payers, providers, and government agencies make clinically appropriate medical utilization decisions.  DSUF ¶ 60.

On September 30, 2015, plaintiff was interviewed by RN Carter, who noted that he had a hearing aid in his right ear, was able to understand the RN and summarize the information provided in his own words, able to read lips, and had no complaints.  DSUF ¶¶ 31, 64; ECF No. 31-5 at 63.  The same day, defendant Lee issued a response to plaintiff's second-level appeal. DSUF ¶ 66; ECF No. 36 at 8.  The response reiterated the appeal and response at the first level and stated that plaintiff continued to claim he needed a cochlear implant and that it was an emergency.  ECF No. 31-5 at 16.  The request further summarized plaintiff's treatment, noting that he was seen by an ENT specialist on January 6, 2015, at which time it was "recommended that [he] be referred to otolaryngology at UC Davis for *evaluation* for a cochlear implant."  Id. (emphasis in original).  It noted that a request for referral to UC Davis was put in on August 6,

2015, and was denied by the IUMC on September 16, 2015, because his case did not meet Interqual criteria, and that "some treatment, specialist referral and diagnostic studies must meet Interqual criteria." Id. at 16-17.  The response further stated that "[t]here is no medical need for you to be evaluated at UCD for a cochlear implant at this time as you currently would not qualify for an implant." Id. at 16.  The plan for plaintiff's treatment at the time was for periodic audiograms to monitor his hearing needs.  Id. at 17.

In preparing the second-level response, Lee reviewed plaintiff's appeal, notes from plaintiff's interview with Lankford on August 6, 2015, plaintiff's unit health record, and all pertinent departmental policies and procedures.  DSUF ¶ 65; ECF No. 31-5 at 16-17.  She conducted a full re-evaluation of plaintiff's medical records and found that, after the previous denial of a cochlear implant, plaintiff was still being treated and evaluated by medical staff, was able to communicate effectively with an RN, and had working hearing aids, which meant a cochlear implant was still not a medical necessity.  DSUF ¶ 69.

On October 8, 2015, defendant Murray reviewed plaintiff's second-level appeal.  DSUF ¶ 73; ECF No. 36 at 9.  It was his responsibility to review decisions of the Chief Physician and Surgeon, in this case defendant Lee, at the second level of appeal.  DSUF ¶ 74.  Murray's role was primarily administrative, and he was not required to routinely review all medical charts and records.  DSUF ¶ 76.  In reviewing appeals, Murray would review the completed forms to ensure they were internally consistent and correctly filled out and that the patient's needs were addressed.  DSUF ¶ 75.  In this case, all documents were correctly filled out, plaintiff's needs were addressed, and the decisions were consistent with the objective findings by the doctors and plaintiff's complaints.  DSUF ¶ 77.  Murray found no reason to reject Lee's decision as it was medically reasonable, appropriate under the standards of care and departmental policies, and was consistent with other healthcare professionals' medical opinions.  DSUF ¶¶ 78-79.  Plaintiff submitted his dissatisfaction with the second-level response on November 23, 2015.  DSUF ¶ 81.

On January 25, 2016, defendant Lewis was assigned to review the third-level appeal.  DSUF ¶ 82; ECF No. 36 at 10.  Her duties as deputy director included overseeing and managing the Health Care Correspondence and Appeals Branch, which receives, reviews, and maintains all

10

health care appeals accepted for the final level of review and renders decisions on those appeals. DSUF ¶¶ 83-84; ECF No. 36 at 10.  Lewis relies on findings by inmates' primary care providers to verify information provided by the inmates and her involvement in plaintiff's case was limited to delegating authority to prepare and sign the third-level response to plaintiff's appeal.  DSUF ¶¶ 85-86.  Her denial of plaintiff's third-level appeal was based on licensed clinical staff's review of plaintiff's appeal and documents in his unit health record and consideration of the IUMC and HUMC's denials of plaintiff's request for a cochlear implant because he did not meet Interqual criteria.  DSUF ¶¶ 87-88; ECF No. 31-4 at 6-7.  The response further noted that plaintiff had a plan of care that included periodic audiograms to monitor his hearing needs, that he currently had functioning hearing aids, and that records reflected he received two hearing aid batteries on December 21, 2015.  DSUF ¶ 90; ECF No. 31-4 at 7.  CCHCS provides medical services for patients that are based on medical necessity and supported by outcome data as effective medical care, and there was no medical need for plaintiff to be evaluated at UC Davis for a cochlear implant or medical indication for cochlear surgery.  DSUF ¶¶ 89, 92.  It was ultimately determined at the third level of review that no intervention was necessary because plaintiff's medical condition was evaluated and he was receiving treatment deemed medically necessary. DSUF ¶¶ 94-95.

On June 24, 2016, plaintiff was seen by Dr. Reisman, an ENT at ENT Associates Medical Group.  DSUF ¶ 32; ECF No. 36 at 5.  Reisman noted that plaintiff had severe to profound hearing loss and that they had attempted a telemedicine consultation but had arranged an in-person visit and audiogram after plaintiff was unable to understand him over video.  ECF No. 31-3 at 19.  Plaintiff reported that he was able to get by with a hearing aid and face-to-face communication but was not able to understand without the face-to-face component.  Id.  Reisman stated that "there were many individual factors that evidenced poor validity for this particular audiogram and likely malingering" and the results of the audiogram were "suspect and possibly invalid."  Reisman further noted that he had a suspicion that plaintiff had hearing loss and that plaintiff appeared to have difficulty using his current hearing aid set up, but that "we cannot be sure that his thresholds are truly this bad and that there is no other secondary gain issues at hand

1   regarding the level of hearing loss that he presents." Id. at 19-20.  In light of the invalid

2   audiogram, Reisman found plaintiff needed an "auditory brainstem response test with thresholds

3   to help determine the true nature of his hearing threshold" and that he was referring plaintiff to

4   UCSD otology to try and establish plaintiff's hearing threshold and for their opinion regarding

5   eligibility for a cochlear implant.  Id. at 20.

6        On November 7, 2016, plaintiff was seen at Riverside University Health System by

7   outside expert audiologist Dr. LeClair.  DSUF ¶ 34; ECF No. 36 at 6.  LeClair conducted several

8   tests and concluded that plaintiff's "objective and subjective tests results do not correspond" and

9   that while plaintiff "likely has some degree of hearing loss . . . objective test results indicate that it

10  is far less than was supposed based on his behavioral responses."  ECF No. 31-3 at 25-26.

11  LeClair concluded that "[p]atient is NOT a candidate for cochlear implantation in either ear" and

12  recommended repair or replacement of plaintiff's haring aid and audiologic re-evaluation as

13  needed.  Id. at 26.

14  VI.    Discussion

15        A.    Deliberate Indifference

16              i.   Legal Standard

17        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

18  must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091,

19  1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

20  to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

21  could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

22  (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal

23  quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

24  A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to

25  respond to a prisoner's pain or possible medical need and (b) harm caused by the

26  indifference."  Id. (citing McGuckin, 974 F.2d at 1060).

27        A difference of opinion between an inmate and prison medical personnel—or between

28  medical professionals—regarding the appropriate course of treatment does not by itself amount to

1  deliberate indifference to serious medical needs.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

2  Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of

3  opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of

4  treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious

5  disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (alteration

6  in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

7                                    ii.  Analysis

8          The facts in this case are largely undisputed, and it is undisputed that, with the exception

9  of defendant Lee who also denied the initial referral to UC Davis and prepared the disability

10  verification worksheet, defendants' conduct was limited to reviewing plaintiff's appeal and

11  medical records and determining whether intervention was warranted based upon the information

12  contained in those records.  Plaintiff's opposition to the motion relies almost exclusively on the

13  January 6, 2015 evaluation and recommendation by Dr. Ludlow.  ECF No. 36 at 5, 7-8.  Plaintiff

14  argues that Ludlow's notation that his hearing loss was severe and profound is a "clear indication

15  of severe and urgent" medical need, that Ludlow "indicated a sense of urgency," and that this

16  notation establishes that delay would cause worsening or progression of plaintiff's hearing loss.

17  ECF No. 36 at 5.  However, the evidence does not support plaintiff's interpretation of Ludlow's

18  recommendation.  The fact that plaintiff's hearing loss was severe does not equate to a finding

19  that it was actively degrading and in need of immediate intervention, and it is clear from review

20  of Ludlow's notes that he did not state the recommendation for evaluation was urgent or indicate

21  there was a risk that plaintiff's hearing would continue to degrade if there was a delay in plaintiff

22  receiving a cochlear implant.  ECF No. 31-5 at 39.  Furthermore, contrary to plaintiff's

23  arguments, Ludlow did not recommend that plaintiff receive a cochlear implant, only that he be

24  evaluated for one.  Id.

25          Plaintiff's dissatisfaction with the treatment he received and belief that he should have

26  received different treatment based upon Ludlow's recommendation that he be referred for

27  evaluation for a cochlear implant amounts to no more than a difference of opinion as to the

28  appropriate treatment.  This is insufficient to establish deliberate indifference.  See Toguchi, 391

13

F.3d at 1058 (difference of opinion between inmate and prison medical personnel—or between medical professionals—regarding appropriate course of treatment does not by itself amount to deliberate indifference).  There are no facts on the record demonstrating that plaintiff ever met the criteria for a cochlear implant, that failure to provide one resulted in further hearing loss, or that the treatment he received "'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [his] health.'"  Toguchi, 391 F.3d at 1058 (quoting Jackson, 90 F.3d at 332).

Nor is there evidence that plaintiff's records revealed an ongoing constitutional violation that would have obligated defendants to intervene.  Although Lee denied the initial request for referral to UC Davis, she also forwarded it to the HUMC for further consideration.  Moreover, plaintiff's records indicated that he was receiving appropriate treatment, was able to communicate with the use of a hearing aid, and a cochlear implant was not medically necessary.  Accordingly, defendants' denial of plaintiff's request for a cochlear implant based upon their review of his records as part of the appeals process does not establish deliberate indifference.  See Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (reliance on medical opinions of staff dentists who had investigated claims and signed off on treatment plan to deny second-level grievance did not constitute deliberate indifference).

Finally, even if the court assumes that defendants should have sent plaintiff to be evaluated for a cochlear implant at the time they reviewed his grievances, there is no evidence that the delay in having plaintiff evaluated caused him additional injury.  See Shapley v. Nev. Bd. of State Prison Comm'rs., 766 F.2d 404, 407 (9th Cir. 1985) (delay of surgery did not constitute deliberate indifference unless delay was harmful); Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delaying treatment does not establish deliberate indifference unless plaintiff proves delay led to further injury); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not constitute Eighth Amendment violation unless it causes "substantial harm").  Although plaintiff argues that his hearing has continued to degrade, this assertion is not supported by the evidence.  The subsequent evaluation by Dr. LeClair included objective test results that showed plaintiff's results "were consistent with normal hearing to at most a moderate hearing

loss" and a determination that plaintiff was not a candidate for cochlear implantation in either ear. ECF No. 31-3 at 25-26. This evidence indicates that plaintiff's hearing did not degrade further and that there was no need for a cochlear implant; there is no evidence that an earlier evaluation would have resulted in a different outcome.

### B.     Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address defendants' qualified immunity argument and the court declines to do so.

### C.     Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be granted on the ground that defendants did not violate plaintiff's Eighth Amendment rights and the court declines to address defendants' qualified immunity argument.

### VII.     Plain Language Summary of this Order for a Pro Se Litigant

The undisputed evidence shows that defendants were not deliberately indifferent to your medical needs when they denied your appeals requesting a cochlear implant. Although your medical records showed that a doctor recommended you be evaluated for a cochlear implant, there was no indication that the recommended referral was urgent or that your hearing would continue to diminish. Also, your medical records indicated that your hearing was being monitored and you were able to communicate with the use of a hearing aid. Your disagreement

15

with defendants about whether you need a cochlear implant is not enough to show a constitutional violation.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 31) be GRANTED;

2. Judgment be entered for defendants; and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 30, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE